EDP/MWG/EWS
F. #2018R00784

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

      - against -                       Docket No. 23-CR-482 (RPK)

WALTER STANZIONE and
WILLIAM NEOGRA,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - -X




<u>MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' PRETRIAL MOTIONS</u>




JOHN J. DURHAM
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201




Erik D. Paulsen
Michael W. Gibaldi
Eric Silverberg
Assistant U.S. Attorneys
    (Of Counsel)

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................... 1

BACKGROUND ................................................................................................... 1

ARGUMENT ....................................................................................................... 3

    I.      The Motions for Severance Should Be Denied................................................ 3

          A.      Applicable Legal Standards for Joinder and Severance .................................. 3

          B.      Severance Is Unwarranted in This Case ......................................................... 6

    II.     The Defendants Are Not Entitled to a Bill of Particulars ........................................ 11

          A.      Applicable Law .................................................................................. 11

          B.      Discussion .................................................................................. 15

    III.    The Court Should Deny the Defendants' Various Requests for Accelerated Trial Disclosure Deadlines................................................................. 19

    CONCLUSION ................................................................................................... 24

PRELIMINARY STATEMENT

The government respectfully submits this memorandum in opposition to the pretrial motions filed by the defendants presently before the Court.  By written motions dated January 27, 2025, defendants Walter Stanzione and William Neogra move for severance, a bill of particulars, and for the Court to impose accelerated deadlines for the government to produce trial-related disclosures.  Taken together, the defendants' arguments reduce to a request for their own individualized trials, at enormous and unwarranted cost in time, resources, inconvenience to witnesses, and prejudice to the government.  The law strongly favors joint trials of the defendants who are indicted together as conspirators to avoid just the sort of inefficiency invited by the defendants' motions.  It also resists requests for bills of particular, where, as here, the government's speaking indictment and pretrial disclosures provide sufficient notice of the allegations and potential witnesses the defendants face at trial.  Nor have the defendants adequately explained why the Court should depart from the law, its individual rules, and standard practice in this district and require the government to make pretrial disclosures several weeks in advance of when they ordinarily would be due.  Accordingly, and for the reasons set forth in greater detail below, the defendants' motions should be denied in their entirety.

BACKGROUND

On November 21, 2023, a grand jury in the Eastern District of New York returned a single count indictment charging the defendants with wire fraud conspiracy, in violation of 18 U.S.C. § 1349.  The charge arose from the defendants' scheme to defraud various New York City agencies through their control and operation of Fire Alarm Electrical Corporation ("Fire Alarm").  From approximately 2009 to 2020, Fire Alarm and its various predecessors in interest held contracts with several New York City agencies, including the New York City Department of Citywide Administrative Services ("DCAS"), the New York City Department of

Environmental Protection ("DEP"), the New York City Department of Education ("DOE"), and the New York City Department of Sanitation ("DSNY") (collectively, "the City Agencies"), to repair, replace and maintain fire alarm systems in city buildings. In connection with those duties, agents and principals of Fire Alarm regularly made fraudulent representations to the City Agencies. Among other things, Fire Alarm (1) submitted requests for payment for installing fire alarm part model types that do not exist, (2) submitted requests for payment for installing model types at artificially inflated prices, and (3) submitted fabricated invoices from alleged third-party vendors to support and justify the fraudulent payment requests.

The evidence will establish that Stanzione and Neogra directed the fraudulent scheme. Stanzione held no formal title at the company and took steps to conceal his involvement, but he effectively ran Fire Alarm and profited handsomely from the scheme. Neogra, a Fire Alarm executive, served as Stanzione's deputy and second in command. The two exchanged numerous communications about the operation of Fire Alarm, including those relating to the preparation of fictitious documentation for fire alarm parts that were submitted to the City Agencies. They directed Fire Alarm employees to design websites and logos for shell companies controlled by Stanzione that were listed on fraudulent invoices submitted to the City Agencies. And together with Stanzione's family members, the defendants developed and implemented a practice of marking up the purchase of fire alarm parts at multiples of their true cost, which purchases were then reimbursed by the City Agencies for the ultimate benefit of both Neogra (who drew a healthy salary from Fire Alarm) and Stanzione (who siphoned off hundreds of thousands of dollars earned by the company to pay personal expenses).

The defendants were arrested on November 30, 2023. Since that time, the government has engaged with defense counsel to assist them with understanding the

government's case, including by answering questions about discovery and proffering key evidence.  The government has also provided discovery materials that identify cooperating witnesses.

Trial is scheduled for May 19, 2025.  The defendants filed their pretrial motions on January 27, 2025.  (See ECF No. 43-2 ("Neogra Mot."), ECF No. 44-1 ("Stanzione Mot.").)

ARGUMENT

The defendants filed various pretrial motions.[1]  First, both defendants move for severance under Federal Rule of Criminal Procedure 14(a) on the basis that they intend to advance antagonistic defenses and will supposedly endure prejudicial spillover if forced to try their cases together.  Second, the defendants claim they are entitled to a bill of particulars requiring the government to identify documents that the government alleges were used to defraud the City Agencies.  Third, the defendants argue that the Court should impose early deadlines for the government to disclose trial materials, including trials exhibits, Jencks Act disclosures, and materials pursuant to Brady and Giglio.  Their arguments are meritless and should be rejected.

I.    The Motions for Severance Should Be Denied

A.    Applicable Legal Standards for Joinder and Severance

Rule 8(a) of the Federal Rules of Criminal Procedure governs the joinder of offenses, whereas Rule 8(b) governs the joinder of defendants.  Where, as here, the joinder involves multiple defendants, Rule 8(b) must be applied.  United States v. Turoff, 853 F.2d 1037, 1043 (2d Cir. 1988).  Rule 8(b) provides that two or more defendants may be joined in a single

---

[1]    Because each defendant joins in his co-defendant's motion, this opposition characterizes the issues raised in the defendants' respective motion papers as having been brought by both defendants.

indictment "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses."  Fed. R. Crim. P. 8(b).  The Second Circuit has "interpreted the 'same series of acts or transactions' language of Rule 8(b) to mean that joinder is proper where two or more persons' criminal acts are unified by some substantial identity of facts or participants, or arise out of a common plan or scheme."  United States v. Rittweger, 524 F.3d 171, 177 (2d Cir. 2008) (some internal quotation marks omitted).  In this context, courts "apply a commonsense rule to decide whether, in light of the factual overlap among charges, joint proceedings would produce sufficient efficiencies such that joinder is proper notwithstanding the possibility of prejudice to either or both of the defendants resulting from the joinder."  United States v. Shellef, 507 F.3d 82, 98 (2d Cir. 2007) (internal quotation marks omitted).  Rule 8(b) is satisfied by either a "substantial identity of facts or participants" or "a common plan or scheme"; it does not require both.  Rittweger, 524 F.3d at 177.  Under this rule [8(b)], "a non-frivolous conspiracy charge" is generally "sufficient to support joinder."  United States v. Nerlinger, 862 F.2d 967, 973 (2d Cir. 1988).

If joinder is proper, a defendant may move pursuant to Federal Rule of Criminal Procedure 14(a) for severance where a joint trial would prejudice a defendant.  Rittweger, 524 F.3d at 178-79 (citing Fed. R. Crim. P. 14(a); United States v. Spinelli, 352, F.3d 48, 54 (2d Cir. 2003)).  The Supreme Court has consistently reaffirmed a "preference in the federal system for joint trials of defendants who are indicted together" because such trials promote efficiency and prevent the injustice of inconsistent verdicts.  Zafiro v. United States, 506 U.S. 534, 537 (1993); see also In re Terrorist Bombings of U.S. Embassies in E. Africa, 552 F.3d 93, 131 (2d Cir. 2008); United States v. Cardascia, 951 F.2d 474, 482-83 (2d Cir. 1991); United States v. Ventura, 724 F.2d 305, 312 (2d Cir. 1983) (where "defendants . . . are jointly indicted [they]

4

should be jointly tried").  That preference is particularly strong where, as here, "defendants are charged with participating in the same criminal conspiracy."  Spinelli, 352 F.3d at 55.

Given the preference in the federal system for joint trials of defendants who are indicted together, severance should be granted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  Zafiro, 506 U.S. at 539; see Cardascia, 951 F.2d at 482 (2d Cir. 1991) ("The defendant must establish prejudice so great as to deny him a fair trial").

A properly joined defendant seeking severance thus carries a heavy burden of showing that joinder will result in "substantial prejudice" to his right to a fair trial.  United States v. Amato, 15 F.3d 230, 237 (2d Cir. 1994) (internal quotation marks omitted); see also United States v. Ventura, 724 F.2d 305, 312 (2d Cir. 1983) ("We have held repeatedly that, absent a showing of substantial prejudice, defendants who are jointly indicted should be jointly tried."). In addition, a defendant seeking severance must show that "the prejudice to him from joinder is sufficiently severe to outweigh the judicial economy that would be realized by avoiding lengthy multiple trials."  United States v. Lanza, 790 F.2d 1015, 1019 (2d Cir. 1986) (internal quotation marks omitted); see also United States v. Page, 657 F.3d 126, 129 (2d Cir. 2011) (citing United States v. Walker, 142 F.3d 103, 110 (2d Cir. 1998), regarding defendant's burden)).  Such a showing is difficult to make because the "risks of prejudice attendant in a joint trial are presumptively outweighed by the conservation of time, money, and scarce judicial resources that a joint trial permits."  United States v. Jimenez, 824 F. Supp. 351, 366 (S.D.N.Y. 1993).  In those rare instances when a defendant establishes a high risk of prejudice, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice."  Zafiro, 506 U.S. at 539.

In other words, a defendant must do far more than simply show some possibility of prejudice. Rather, he must show "prejudice so substantial as to amount to a miscarriage of justice." United States v. Friedman, 854 F.2d 535, 563 (2d Cir. 1988) (internal quotation marks omitted).

The decision whether to grant a motion for severance is committed to the sound discretion of the trial judge and will not be disturbed on appeal absent a showing that a defendant was substantially prejudiced by a joint trial. United States v. Cacace, 796 F.3d 176, 192 (2d Cir. 2015); see also United States v. Feyrer, 333 F.3d 110, 114-15 (2d Cir. 2003) ("We rarely overturn the denial of a motion to sever.").

B.    Severance Is Unwarranted in This Case

The defendants argue that they are entitled to severance under Rule 14 because they likely will blame one another and will be prejudiced by adverse evidence admitted against each other, some of which, they claim, would not be admissible against them if they were tried separately.  Neither argument is availing.

1.    The Defenses Articulated by the Defendants are Not Mutually Antagonistic

Finger-pointing is not a basis for severance.  See Zafiro, 506 U.S. at 540-41 (rejecting petitioners' theory that "when two defendants both claim they are innocent and each accuses the other of the crime," the jury will assume at least one is guilty); Cardascia, 951 F.2d at 484-85 ("[A]n adversarial stance by a co[-]defendant clearly does not, alone, require trials to be severed.  Were this true, a virtual ban on multidefendant conspiracy trials would ensue since co-conspirators raise many different and conflicting defenses."); United States v. Hameedi, No. 17-CR-137 (JGK), 2017 WL 5152991, at *4 (S.D.N.Y. Nov. 3, 2017) (observing that the Second Circuit has repeatedly rejected "finger[-]pointing" arguments, whereby each defendant blames the other for his culpability, "as a basis for severance.").  Instead, severance based on a

"mutually antagonistic defense" requires "a factual demonstration that acceptance of one party's defense would tend to preclude the acquittal of [the] other."  United States v. Salameh, 152 F.3d 88, 116 (2d Cir. 1998) (internal quotation marks omitted).

The defendants have not made that showing here.  As an initial matter, both defendants disclaim any knowledge of the fraud and appear to resist the notion that any fraud even occurred.  (See Stanzione Mot. at 4-5; Neogra Mot. at 3-4.)  Their defenses, therefore, are not "mutually antagonistic," because accepting one defendant's claim that he did not know about the fraud (let alone that one that occurred) would not tend to preclude the other defendant's acquittal.  See Salameh, 152 F.3d at 116.

Nor have the defendants clearly articulated how their defenses are mutually antagonistic.  Stanzione claims that he and Neogra seemingly will be at odds because Neogra signed certifications submitted to the City Agencies, while Stanzione "lacked a title or an official role that gave him primary responsibility for any actions or omissions of Fire Alarm, its affiliates, or its employees," and was "removed from the day-to-day operations of Firearm Alarm and its submissions to the City[.]"  (Stanzione Mot. at 4.)  Nowhere in his brief does Stanzione even say he will point the finger at Neogra; he instead asserts (without citing specifics) that "the evidence that exculpates Stanzione implicates Neogra."  (Stanzione Mot. at 5.)  Neogra, in turn, asserts that he "will claim that, if any criminality occurred, he was not part of it and was unaware of its and he was misled by Stanzione."  (Neogra Mot. at 3.)  But the vague suggestion that he could testify about his lack of knowledge and "blam[e] others" simply falls far short under the law.  See Zafiro, 506 U.S. at 539 (severance not required even though both defendants contended at trial that each had been the innocent dupe of the other; United States v. Diaz, 176 F.3d 52, 103-04 (2d. Cir. 1999) (severance not required even though both defendants claimed they knew

7

nothing of drugs hidden in van and each accused the other of placing them there); United States v. Haynes, 16 F.3d 29, 31-32 (2d Cir. 1994) (severance not required even though defendant was implicated by his co-defendant's testimony).

Finally, even assuming the defendants could show any sort of prejudice from a joint trial (and they cannot), they have not demonstrated a "serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." United States v. Schlegel, 687 Fed. App'x 27, 28 (2d Cir. 2017) (quoting Zafiro, 506 U.S. at 539). See also Zafiro, 506 U.S. at 538-39 (holding that "mutually antagonistic defenses are not prejudicial per se," and that severance is not required when defendants adopt antagonistic defenses "even if prejudice is shown"). Their vague assertions of inconsistent defenses do not rise to the level of prejudice needed to warrant severance.

        2.    Defendants' Claims of "Spillover" Prejudice Do Not Warrant Severance

The defendants claim they are entitled to severance because they will be subject to "spillover prejudice." They say the case is too complex for a jury to keep straight, that much of the evidence relates to their co-defendant, that they will be tarred with the brush of that evidence, and that there are even categories of evidence that would be inadmissible against them individually if tried alone. (Stanzione at 5; Neogra Mot. at 5-7.)

There is no "spillover prejudice" here that would require severance. At the outset, a defendant seeking severance based on "spillover prejudice" "bears an extremely heavy burden" and needs "to show prejudice so substantial as to amount to a miscarriage of justice." United States v. Reichberg, 5 F.4th 233, 243 (2d Cir. 2021) (internal citation and quotation marks omitted). In fact, the Second Circuit has repeatedly permitted joint trials even when they involve

"defendants who are only marginally involved alongside those heavily involved." Spinelli, 352 F.3d at 55 (quoting United States v. Locascio, 6 F.3d 924, 947 (2d Cir. 1993)).

Even though each defendant points to the other as facing more evidence, they fail to acknowledge the significance of the fact that they both are alleged to sit at the heart of precisely the same conspiracy, charged in precisely the same count. Whether the defendants are tried alone or together, evidence of conduct in furtherance of the conspiracy is admissible against each of the defendants. United States v. Rosa, 11 F.3d 315, 341 (2d Cir. 1993) ("A defendant's right to a fair trial does not include the right to exclude relevant and competent evidence. Thus, the fact that testimony against a codefendant may be harmful is not a ground for severance if that testimony would also be admissible against the moving defendant tried separately."); United States v. Barret, 824 F. Supp. 2d 419, 433 (E.D.N.Y. 2011) ("Evidence adduced against one alleged co-conspirator is 'neither spillover nor prejudicial' if it would be admissible at a separate trial against the movant as an act of a co-conspirator in furtherance of a conspiracy due to the nature of conspiratorial illegal activity."). Accordingly, the defendants' contentions that certain categories of evidence would be inadmissible against them if tried individually is simply wrong.[2]

Likewise, to the extent that each defendant argues that the evidence is stronger or more voluminous against his co-defendant, that too is no reason to sever. As the Second Circuit

---

[2]     It is not clear to the government exactly what evidence the defendants claim would be inadmissible against them if tried individually. Stanzione seems to argue that "Neogra's signature on some documents make those admissible against him but not against Stanzione if tried alone." (Stanzione Mot. at 5.) But those documents would still be admissible on any number of grounds, including potentially as co-conspirator statements, business records, and to establish Stanzione's efforts to conceal his association with Fire Alarm Electric. Neogra's brief does not identify what evidence would be inadmissible against him if tried alone. (Neogra Mot. at 5 ("there will be substantial periods of time where evidence will be offered against his co-[]defendants and others having absolutely nothing to do with Mr. Neogra and some of which would not [be] admissible as to him, we submit, in a trial of Mr. Neogra alone.").) But assuming he is referring to the financial activities in the sham companies controlled Stanzione (see id.

observed in Cardascia, a "disparity in the quantity of evidence and of proof of culpability are inevitable in any multi-defendant trial, and by themselves do not warrant a severance."  951 F.2d at 484.  Nor is the nature of the case grounds for severance.  While the government's proof will involve paper records typical of any white-collar fraud trial, the defendants' motion dramatically overstates the complexity of the evidence and the length of the government's case, which the government estimates will take approximately two weeks.  (Contra Neogra Mot. at 7 (estimating that a "combined trial of both defendants would last well over two weeks").)  Finally, judicial efficiency and fairness strongly favor a joint trial in this case, which would prevent the repeated presentation of the same evidence.  That is especially so where, as here, the government estimates calling roughly 15 civilian witnesses.  As the Supreme Court has stated:

> It would impair both the efficiency and the fairness of the criminal justice system to require . . . that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand. Joint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability—advantages which sometimes operate to the defendant's benefit.  Even apart from these tactical considerations, joint trials generally serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.

Richardson, 481 U.S. at 210; see also Bruton v. United States, 391 U.S. 123, 134 (1968) (joint trials conserve state funds, diminish inconvenience to witnesses and avoid delays); United States

---

(referring to "litany of alleged fraudulent acts and money transfers and manipulation by others")), that evidence would be admissible against Neogra to contextualize his communication with Stanzione about Fire Alarm business, despite Stanzione's having no formal role at the company.  Finally, any prejudice flowing from such evidence could be cured by a limiting instruction.  See Richardson v. Marsh, 481 U.S. 200, 211 (1987) (proper limiting instructions often suffice to cure risk of prejudice).

v. Lyles, 593 F.2d 182, 191 (2d Cir. 1979) (joint trials conserve resources, lessen the burden on jurors and avoid repetitive testimony).

The defendants' motions fall well short of the high bar set for severance. They should be denied.

## II.    The Defendants Are Not Entitled to a Bill of Particulars

Neogra moves for a bill of particulars pursuant to Fed. R. Crim. P. 7(f), asking the Court to order the government to provide (1) "the identification of documents the government alleges were false and fraudulent" (Neogra Mot. at 8) and (2) provide the names of any unindicted co-conspirators.  (Id. at 10.)

As set forth more fully below, the defendant's first request—for a list of fraudulent documents—fails on the merits and should be denied.  Neogra is seeking to improperly use his bill of particulars as a "discovery device" and a "general investigative tool," United States v. Perryman, 881 F. Supp. 2d 427, 430-31 (E.D.N.Y. 2012); his request is tantamount to asking the government to lay out the evidence of its case prior to trial.  This is particularly inappropriate in the instant case, where the details of the government's allegation have been made abundantly clear in a detailed speaking indictment, a detailed search warrant affidavit, comprehensive discovery, and numerous fulsome conversations with the defense. The defendant's second request—for a list of unindicted co-conspirators—is improper for the same reasons noted above and should also be denied as moot.

### A.    Applicable Law

The Federal Rules of Criminal Procedure require only that an indictment set forth a "plain, concise, and definite written statement of the essential facts constituting the offense." Fed. R. Crim. P. 7(c).  A bill of particulars is required only when the charges in the indictment are so general that they fail to apprise the defendant of the specific acts of which he is accused.

11

United States v. Torres, 901 F.2d 205, 234 (2d Cir. 1990); see also United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987); United States v. Salazar, 485 F.2d 1272, 1277 (2d Cir. 1973) (finding sufficient "indictments which track the language of a statute and, in addition, do little more than state time and place in approximate terms").  The ultimate test of the appropriateness of a bill of particulars is whether the information is necessary, not whether it would be helpful to the defendant.  United States v. Taylor, 17 F. Supp. 3d 162, 178-79 (E.D.N.Y. 2014) (noting that "[t]he applicable standard for whether a bill of particulars should issue is not whether the information would be helpful to the defense, but whether it is necessary" and "[a] bill of particulars may not be used by the defense as a fishing expedition or to force the government to reveal all its evidence before trial"); see United States v. Aliperti, 867 F. Supp. 142, 148 (E.D.N.Y. 1994); United States v. Weinberg, 656 F. Supp. 1020, 1029 (E.D.N.Y. 1987).

Neither the Federal Rules of Criminal Procedure nor the Second Circuit requires that the government "particularize" its evidence; rather, a bill of particulars is required only when the charges in the indictment are so general that they fail to apprise the defendant of the specific acts of which he or she is accused.  See Torres, 901 F.2d at 234.  If the information sought by the defendant is provided in the indictment or through some other means, including discovery, a bill of particulars is not warranted.  See United States v. Chen, 378 F.3d 151, 163 (2d Cir. 2004).  The defendant bears the burden of showing that denial of the requested particulars will result in "prejudicial surprise at trial or will adversely affect his rights."  United States v. Maneti, 781 F. Supp. 169, 186 (W.D.N.Y. 1991).

It is inappropriate to use Rule 7(f) to limit the government's evidence or flesh out its prosecutorial theories in advance of trial.  Barret, 824 F. Supp. 2d at 439 ("[T]he court is mindful that it cannot compel the government to disclose, through a bill of particulars, the

manner in which it will attempt to prove the charges, the precise manner in which a defendant committed the crime charged, or to give a preview of its evidence and legal theories") (quotations and citations omitted); Taylor, 17 F. Supp. 3d at 179 (noting that "[a] bill of particulars may not be used by the defense as a fishing expedition or to force the government to reveal all its evidence before trial"); United States v. Ianniello, 621 F. Supp. 1455, 1478 (S.D.N.Y. 1985) ("To require most of the further disclosure the defendants seek would do little more than restrict the government's proof at trial, which is not the purpose of a bill of particulars."). Consequently, a motion for a bill of particulars must be denied where it would "unduly restrict the government's ability to present its case." United States v. Baez, 62 F. Supp. 2d 557, 559 (D. Conn. 1999).

In short, it is well-settled that "[t]he Government may not be compelled to provide a bill of particulars disclosing the manner in which it will attempt to prove the charges, the precise manner in which the defendant committed the crimes charged, or a preview of the Government's evidence or legal theories." United States v. Carpenter, No. 18-CR-362 (ADS), 2018 WL 6933160, at *6 (E.D.N.Y. Dec. 28, 2018). Following these general principles, the law does not require, for example, that the government provide detailed evidence about a conspiracy, or the precise evidence about the roles played by the defendant or his co-conspirators. See, e.g., United States v. Urso, 369 F. Supp. 2d 254, 272 (E.D.N.Y. 2005) ("As a general rule, a defendant is not entitled to receive details of the government's conspiracy allegations in a bill of particulars.") (citing United States v. Feola, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987); United States v. Jones, No. 85-CR-1075 (CSH), 1986 WL 275, at *2 (S.D.N.Y. May 28, 1986) ("Similarly, the Government need not disclose the specific role(s) played by each defendant in the conspiracy, or the particular acts each defendant is alleged to have participated in, had

13

knowledge of, or for which he is being held responsible") (internal citations omitted).  Nor is the defendant entitled to discover through a bill of particulars the specific dates, times and locations of a crime, or the identities of witnesses or documents that will establish the charged crime.  See United States v. Persico, 621 F. Supp. 842, 868 (S.D.N.Y. 1985).  Such requests have been deemed little more than impermissible attempts to force the government to "particularize all of its evidence."  United States v. Cephas, 937 F.2d 816, 823 (2d Cir. 1991); see also United States v. Facciolo, 753 F. Supp. 449, 451 (S.D.N.Y. 1990), aff'd sub nom, United States v. Skowronksi, 968 F.2d 242 (2d Cir. 1992).

　　　　　This restriction includes co-conspirator information.  While "[t]he Second Circuit has upheld decisions [both] granting and denying requests for the identity of co-conspirators," United States v. Chalmers, 410 F. Supp. 2d 278, 286 (S.D.N.Y. 2006) (collecting and comparing cases), the question is "whether the names of unindicted co-conspirators are necessary to prepare a defense and avoid surprise."  United States v. Solomonyan, 452 F. Supp. 2d 334, 349, correcting and superseding opinion at, 451 F. Supp. 2d 626, 641-42 (S.D.N.Y. 2006).  In deciding whether to grant requests for the identities of unindicted co-conspirators, courts in this Circuit have considered the following six factors: (1) the number of co-conspirators; (2) the duration and breadth of the alleged conspiracy; (3) whether the government has otherwise provided adequate notice of the particulars; (4) the volume of pre-trial disclosures; (5) the potential danger to co-conspirators; and (6) the potential harm to the government's investigation.  United States v. Nachamie, 91 F. Supp. 2d 565, 572 (S.D.N.Y. 2000).  Applying this standard, courts in this District have consistently held that the identities of co-conspirators are beyond the proper scope and function of a bill of particulars.  See United States v. Shkreli, No. 15-CR-637 (KAM), 2016 WL 8711065, at *4-6 (E.D.N.Y. Dec. 14, 2016) (denying request for identities of

unindicted co-conspirators in complex, multi-year financial fraud case); United States v. Barrera, 950 F. Supp. 2d 461, 476-79 (E.D.N.Y. 2013) (WFK) (defendant not entitled to bill of particulars identifying unnamed co-conspirators in RICO case with predicate acts of conspiracy to murder and attempted murder); United States v. Raniere, 384 F. Supp. 3d 282, 323-4 (E.D.N.Y. 2019) (denying a bill of particulars, including request for unindicted co-conspirator information); United States v. Messina, No. 11-CR-31 (KAM), 2012 WL 463973, at *10-11 (E.D.N.Y. Feb. 13, 2012) (denying request for the identification of unindicted co-conspirators in an eight-count indictment charging a racketeering conspiracy, loansharking and illegal gambling); United States v. Persing, No. 06-CR-815 (BMC), 2008 WL 11344620, at *3-4 (E.D.N.Y. May 6, 2008) (denying request for identities of unindicted co-conspirators in 16-count indictment charging the defendant with conspiring to distribute and possess with intent to distribute Vicodin and RICO conspiracy, including predicate acts of extortionate collection of credit and extortion, and parallel substantive counts); United States v. Mason, No. 06-CR-80 (NRB), 2007 WL 541653, at *4-5 (S.D.N.Y. Feb. 16, 2007) (denying motion for the identification of all co-conspirators in connection with indictment charging ten defendants in seven-year narcotics conspiracy). Finally, "the refusal of a district court to direct the filing of a bill of particulars as to the names of unindicted co-conspirators is not an abuse of discretion." United States v. Aliperti, 867 F. Supp. 142, 148-49 (E.D.N.Y. 1994).

      B.    Discussion

      The defendants in this case have been provided with more than enough information to allow them to prepare a defense, avoid unfair surprise, and preclude double jeopardy—the only permissible justifications for a bill of particulars. See United States v. GAF Corp., 928 F.2d 1253, 1260 (2d Cir. 1991). Put simply, their motion is an improper effort to obtain a preview of the government's particularized evidence in advance of trial.

The government initiated the instant prosecution with a speaking indictment that describes the charged scheme in detail.  Among other things, the indictment notes the following:

- That the conduct relates to contracts with four specific city agencies: DCAS, DEP, DOE and DSNY (Indictment ¶ 4);

- That the defendants submitted false invoices and false certifications to the city agencies by including them in monthly submissions made to those same agencies that were sworn to be truthful and accurate (Indictment ¶ 5);

- That the invoices and certifications were fraudulent in that they listed parts and models that did not exist, and they inflated the prices for equivalent items (Indictment ¶ 6); and

- That the false invoices were either put in the name of shell companies actually owned defendant Stanzione (Indictment ¶ 7), or were modified so that they appeared to look like they came from legitimate retailers (Indictment ¶ 8).

It is well-settled that "indictments which track the language of a statute and, in addition, do little more than state time and place in approximate terms" are sufficient to provide notice.  See United States v. Salazar, 485 F.2d 1272, 1277 (2d Cir. 1973).  Here, the government has gone well beyond what is required, and the defendant's motion should be denied on that basis alone.

Of course, the government has provided much more detail than just that provided in the Indictment.  Among other documents, the government provided a search warrant affidavit more than a year ago which provides significant additional detail to the above-charged scheme. (See GOV-DCAS-0000001.)  The information in just this one document included: the nature of the specific city agency contracts involved; the names of the companies formally responsible for the contracts; the names of some of the shell companies used by the defendants (including FA Distributors, Ficomsec, Ago and Alaudin Supplies, Pine Sash Distributors and WPSS Systems) and the approximate dates that those shell companies were used; names of some of the legitimate retailers (such as Colonial Electrical Supply) that the defendants abused to fabricate invoices; and various methods used by the defendants to obscure their conduct (such as the creation of

false websites).  Here, too, the government has provided more detail than is required by either law or local custom.

These descriptions of the charges and evidence have, of course, been supplemented with extensive discovery and lengthy, detailed discussions with the parties concerning the evidence of the charges.[3]  Here, the defendants attempt to characterize the government's discovery as problematic, complaining that the volume of Rule 16 materials— much of which was turned over long ago—necessitates that the government enumerate the specific evidence it will use at trial.  This is plainly improper: a bill of particulars is meant to clarify allegations, not force the government to show how it will prove its case.

The posture of this case—featuring both voluminous discovery and a clear speaking indictment—is not unusual.  Motions for bills of particulars are routinely denied where the defendants are charged by speaking indictment and significant additional information has been supplied in discovery.  See, e.g., United States v. Boustani, No. 18-CR-681 (WFK), ECF Dkt. No. 231, at *17-20 (denying motion for bill of particulars identifying false statements in fraud case where defendants were charged by speaking indictment and provided extensive discovery); United States v. Aguilar, No. 20-CR-390 (ENV), ECF Dkt. No. 39 (denying motion for bill of particulars where information sought was overbroad in view of discovery provided, among other reasons); United States v. Huawei Technologies Co., Ltd., No. 18-CR-457 (AMD),

---

[3]    The government has spoken about its case in detail with defense counsel, both together and individually, on numerous occasions.  The government described the case fulsomely so that the defendants did not misunderstand either the allegations or the strength of the government's evidence as the parties made decisions on whether to continue to trial.  These conversations have been exceedingly cordial on all sides, and the government expects that defense counsel would concur that the government has been more than transparent about the details of its case.  While such conversations were not necessary to obviate the need for such a bill of particulars, they provide further reason to believe that there is no actual confusion about the nature of the charges in this case.

ECF Dkt. No. 303 (denying motion for bill of particulars seeking a list of alleged fraudulent statements where defendants were charged in a speaking indictment and there was no actual confusion about the nature of the fraud scheme).  As such, mere volume of discovery is itself not a basis for granting a bill of particulars.  See, e.g., United States v. Columbo, No. 04-CR-273 (NRB), 2006 WL 2012511, at *6 (S.D.N.Y. July 18, 2006) (rejecting a request for a bill of particulars based on defendants' assertions that the discovery was "voluminous and overwhelming" because, inter alia, the defendants "had more than a year to review discovery prior to trial"); United States v. Wedd, No. 15-CR-616 (KBF), 2016 WL 1055737, at *3 (S.D.N.Y. Mar. 10, 2016) ("Although the Court recognizes the burdens on defense counsel imposed by the volume of discovery in this case, defendants are not entitled to a roadmap of the Government's proof to facilitate their review of that discovery.").

In sum, the defendants' request amount to little more than an attempt to gain a preview of the government's case.  This is wholly improper.  "It is not the function of a bill of particulars to allow defendants to preview the evidence or theory of the government's case." United States v. Gibson, 175 F. Supp. 2d 532, 537 (S.D.N.Y. 2001) (citing United States v. Perez, 940 F. Supp. 540, 551 (S.D.N.Y. 1996)); Barret, 824 F. Supp. 2d at 439 (observing that the defendant cannot compel the Government to disclose in a bill of particulars the precise manner in which a defendant committed a charged offense).  Requests for the "wheres, whens and with whoms" of a charged offense that courts have routinely held are beyond the proper scope of a bill of particulars.  United States v. Rivera, No. 09-CR-619 (SJF), 2011 WL 1429125, at *8 (E.D.N.Y. Apr. 13, 2011); see also Chen, 378 F.3d at 163 (upholding the denial of a bill of particulars as to the "exact time and place of each alleged act associated with each offense identified in the indictment").  The crimes alleged in the instant case are neither so extensive nor

so complex as to warrant breaking with this established precedent.  See, e.g., Shkreli, 2016 WL 8711065, at *7 (denying request for false and fraudulent statements or omissions in complex fraud involving multiple schemes spanning almost five years).

The defendants' secondary request for the names of co-conspirators through a bill of particulars is similarly improper.  For the reasons noted above, the disclosures made to date, which include detailed descriptions of the crimes charged, provide sufficient notice of the alleged participants to warrant denial of this motion.  However, as noted above, the government has consistently endeavored to provide more information than is strictly required, such that this request is also, in part, moot.  In various conversations with defense counsel (as described above in footnote 3), the government has stated its conclusion, based on the evidence in the case, that various members of Stanzione's family are unindicted co-conspirators in the charged offense.[4] The government reserves the right to supplement this list to the extent warranted by the evidence.

For the reasons noted above, the government submits that the defendants' motion for a bill of particulars should be denied.

III.    The Court Should Deny the Defendants' Various Requests for Accelerated Trial Disclosure Deadlines

Finally, the defendants' motions collectively seek to impose the following accelerated deadlines for the government's notice and production of trial-related materials: (1) the government's exhibit list and witness list 60 days before trial (Neogra Mot. at 12-15), (2) immediate notice of any material the government seeks to admit at trial pursuant to Federal Rule of Evidence 404(b) (id. at 16), (3) prior witness statements pursuant to 18 U.S.C. § 3500 ("3500 Material") at least one month before trial (Stanzione Mot. at 6-7; Neogra Mot. at 15 n.2),

_____

[4]    At this pre-trial posture, the government will provide those names to defense counsel under cover of email, rather than reveal them publicly at this time.

(4) expert notice "sufficiently in advance of trial to permit Stanzione to make any appropriate motions in limine for the Court's consideration" (Stanzione Mot. at 7), (5) immediate disclosure of unidentified exculpatory evidence (Neogra Mot. at 15), and (6) disclosure of impeachment material three-to-four weeks before trial (id.).  For the following reasons, these requests should be denied.

First, the defendants move to require the government to produce witness and exhibit lists 60 days before trial.  Those requests are improper and should be denied.  The Government intends to disclose witness and exhibit lists, including copies of marked exhibits, sufficiently early to ensure a fair and efficient trial.  As with 3500 Material, the government expects to begin disclosing those materials two weeks before trial.  See United States v. Reddy, 190 F. Supp. 2d 558, 571 (S.D.N.Y. 2002) ("The Government has indicated that it intends to make its exhibits available for inspection consistent with its production pursuant to 18 U.S.C. § 3500.  The Court finds that such disclosure is sufficient under the circumstances to promote an orderly trial.").  To the extent the defendants seek earlier disclosures, the Government is willing to negotiate a reasonable schedule, provided the defendants will agree to be bound by the same obligations placed on the Government.  See, e.g., United States v. Chalmers, 474 F. Supp. 2d 555, 573 (S.D.N.Y. 2007) (ordering defendants and Government to disclose exhibits on the same schedule).  However, the proposal that the government provide witness and exhibit lists 60 days before trial is extraordinary and unwarranted given the expected length of this trial, notwithstanding the voluminous discovery.  In other recent complex cases in the Second Circuit involving voluminous discovery, the government has been ordered to produce its exhibit list and witness list much closer to trial.  See, e.g., United States v. Perez, No. 23-CR-99 (LJL), 2025 WL 41612, at *6 (S.D.N.Y. Jan. 7, 2025) (approving government's proposal to disclose witness and

exhibit lists one week before trial); United States v. Rueb, No. 00-CR-91 (RWS), 2001 WL 96177, at *9 (S.D.N.Y. Feb. 5, 2001) (directing government to disclose witness list 30 days before trial); United States v. Falkowitz, 214 F. Supp. 2d 365, 393 (S.D.N.Y. 2002) (ordering government to disclose exhibit list one week before trial in a fraud case where the government had produced approximately 100,000 documents in discovery).

Second, there is no basis to order the government to provide immediate notice pursuant to Federal Rule of Evidence 404(b) based on the defendants' concern to avoid "trial by ambush." (Neogra Mot. at 16.) Federal Rule of Evidence 404(b) requires that the government "provide reasonable notice" of other act evidence it intends to introduce at trial. Fed. R. Evid. 404(b)(1)(A). "The courts in this circuit have generally interpreted 'reasonable notice' to be ten days to two weeks before trial." United States v. James, No. 02-CR-778 (SJ), 2007 WL 914242, at *8 (E.D.N.Y. Mar. 21, 2007) (citing cases). Here, the government proposes to provide Rule 404(b) notice in connection with its motions in limine, which the government intends to file 30 days before trial pursuant to Section V.B.1 of this Court's Individual Practice Rules. The defendants' motions fail to explain why any earlier notice is necessary, as thirty days' notice will be more than sufficient to avoid "trial by ambush." Thus, the Court should deny the defendant's request for any earlier notice. See, e.g., James, 2007 WL 914242, at *8 (denying motion for immediate Rule 404(b) notice where government "offered to provide Rule 404(b) notice three weeks prior to trial").

Third, the Court should not order the government to produce prior witness statements one month before trial. The Jencks Act, 18 U.S.C. § 3500, is the "exclusive vehicle" for discovery of witness statements, Palermo v. United States, 360 U.S. 343, 350-51 (1959), and requires the government to disclose prior statements of witnesses before cross examination of

those witnesses by the defense.  18 U.S.C. § 3500(a).  The Second Circuit has repeatedly interpreted § 3500 in accordance with the plain language of the statute.  See, e.g., United States v. Coppa, 267 F.3d 132, 145 (2d Cir. 2001) ("the Jencks Act prohibits a District Court from ordering the pretrial disclosure of witness statements").  Thus, the Court should deny the defendants' request for early disclosure of 3500 Material.  Nevertheless, in an effort to avoid any adjournments or delay in the trial, the government will produce 3500 Material two weeks before trial, which is consistent with the government's practice in similar cases in this District.

Fourth, consistent with this Court's Local Criminal Rule 16.2, the government intends to make any expert disclosures required by Federal Rule of Criminal Procedure 16(a)(1)(G) no later than 60 days before trial.  In light of this representation, the Court should deny as moot the defendants' request for expert notice to be made sufficiently in advance of trial.

Fifth, the Court should deny as moot the defendants' request for immediate disclosure of unidentified exculpatory material pursuant to Brady v. Maryland, 373 U.S. 83 (1963), and its progeny.  The government is aware of and will comply with its Brady obligations.  Further, the Court previously ordered the government—as it is required to do by Federal Rule of Criminal Procedure 5(f)—to comply with its Brady obligations, and the government has acknowledged on the record that it is aware of and will fulfill its obligations.  (See ECF Dkt. Nos. 5, 19.)  Should the government become aware of any Brady material, it will provide such material promptly.  In light of these representations, the Court should deny the defendants' motions as moot.  See, e.g., United States v. Mohamed, 148 F. Supp. 3d 232, 246 (E.D.N.Y. 2015) ("Courts in the Second Circuit generally do not compel immediate disclosure of Brady/Giglio materials where (1) the Government represents it is aware of and will comply with

its <u>Brady</u>/<u>Giglio</u> obligations, and (2) the Defense does not provide any reason for suspecting the Government will not comply.").

Finally, the Court should deny as moot the defendants' request for early disclosure of impeachment materials pursuant to <u>Giglio v. United States</u>, 405 U.S. 150 (1972). As a general rule, a defendant in a criminal case has no pretrial right to <u>Giglio</u> material, <u>see</u> <u>United States v. Nixon</u>, 418 U.S. 683, 701 (1974), and <u>Giglio</u> material must be disclosed only "in time for its effective use at trial," <u>Coppa</u>, 267 F.3d at 142. Here, the government represents that it will comply with its <u>Giglio</u> obligations by adhering to its customary practice of disclosing such materials along with disclosure of the 3500 Material, <u>i.e.</u>, two weeks before trial. Other courts have held that disclosure of <u>Giglio</u> materials on a similar timeframe satisfies the government's obligation to produce Giglio material in time for its effective use at trial. <u>See, e.g.</u>, <u>United States v. Espinal</u>, 96 F. Supp. 3d 53, 66 (S.D.N.Y. 2015) (noting that <u>Giglio</u> is customarily produced at the same time as 3500 Material because it "does not ordinarily require any independent investigation to use it effectively at trial."); <u>Barret</u>, 824 F. Supp. 2d at 456 (ordering government to produce <u>Giglio</u> materials two weeks before trial).

CONCLUSION

For the reasons set forth above, the government respectfully submits that the

defendants' motions are without merit and should be denied.

Dated:      Brooklyn, New York
            February 10, 2025

                                    Respectfully submitted,

                                    JOHN J. DURHAM
                                    UNITED STATES ATTORNEY
                                    Eastern District of New York
                                    271 Cadman Plaza East
                                    Brooklyn, New York 11201

                          By:   /s/_____
                                Erik D. Paulsen
                                Michael W. Gibaldi
                                Eric Silverberg
                                Assistant United States Attorneys
                                (718) 254-6135 / 6067 / 6365